UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.  8:24-cv-00617 MWC (KESx)                           Date: December 11, 2024

Title  Daniel Frank *et al.* v. Yardi Systems Inc. *et al.*

Present: The Honorable:    Michelle Williams Court, United States District Judge

| T. Jackson | No Reporter |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings: (IN CHAMBERS) ORDER GRANTING INTERVENORS' MOTION TO INTERVENE AND TO TRANSFER (DKT. 161) JS-6**

Before the Court is a motion to intervene and transfer, dismiss, or stay filed by Intervenors Mckenna Duffy and Brett Michael ("Intervenors").  Dkt. # 161 ("*Mot.*").  Defendants 10 Federal MGMT, LLC, A.J. Dwoskin & Associates, Inc., Asset Living, LLC, Avenue5 Residential, LLC, Balaciano Group, Continental Realty Corp., Greystar Real Estate Partners, LLC, Lincoln Property Company, RAM Partners, LLC, RPM Living, LLC, Walton Communities, LLC, Western National Property Management, and Yardi Systems, Inc. (collectively, "Defendants") and Plaintiffs Daniel Frank, Lakshmi Nagireddi, Eric Yeckley, Sherrie Miles, and Heather Yashar (collectively, "Plaintiffs") opposed.  Dkt. # 168 ("*Def. Opp.*"); Dkt. # 169 ("*Plaintiff Opp.*").  The Intervenors replied.  Dkt. # 174 ("*Reply*").  The Court finds the matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  Having considered the moving and opposing papers, the Court **GRANTS** the motion to intervene and transfer.

I.   Background

Intervenors are the proposed class representatives in a nationwide class action filed in the Western District of Washington: *Duffy, et al. v. Yardi Systems, Inc., et al.*, No. 2:23-cv-01391-RSL (W.D. Wash.) (the "Washington case").  *Mot.* 1:2–7.  Intervenors filed the Washington case on September 8, 2023.  *Id.*  In that lawsuit, Intervenors allege that Yardi Systems, Inc. ("Yardi") and its property management clients use software algorithms, specifically a product called "RENTmaximizer," to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:24-cv-00617 MWC (KESx)                                Date: December 11, 2024

Title       Daniel Frank *et al.* v. Yardi Systems Inc. *et al.*

anticompetitively fix rental prices of multifamily rental units.  *Id.*, Ex. B, ¶¶ 4–5 ("*Wash. Compl.*").

On March 22, 2024, Plaintiffs filed this case in the Central District of California, against Yardi and some of its other property manager clients (the "California case" or "this case").  Dkt. # 1.  This case also alleges that Yardi, in a conspiracy with its property manager clients, anticompetitively fixed prices of apartment leases, using Yardi's RENTmaximizer service.  *Id.* ¶¶ 3, 6, 58–61.  In their original complaint, Plaintiffs inserted a footnote about the Washington case, *see* Dkt. # 1, 4:23–28, n.3, but the parties did not file a notice of related cases with this Court.

On August 19, 2024, Plaintiffs filed a First Amended Complaint, which is the operative complaint in this lawsuit (the "Complaint").  Dkt. # 100 ("*Cal. Compl.*").  Defendants have since filed motions to dismiss.  *See* Dkts. # 108, 120, 123, 125, 137.  The Court has not ruled on these motions.  On November 5, 2024, the Intervenors filed this motion to intervene and transfer, dismiss, or stay the case.  *Mot.*

II.      Request to Intervene

Under Federal Rule of Civil Procedure ("Rule") 24(b)(2), "[A] court may grant permissible intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *NW Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996) (citing *Greene v. United States*, 996 F.2d 973 (9th Cir. 1993)).

Intervenors explain that they have independent grounds for jurisdiction because they (like the Plaintiffs in this case) bring claims under the Sherman Act, a federal antitrust statute.  *Mot.* 6:12–15.  Intervenors assert that their intervention is timely because in the seven months between their Washington case and this California case, "there has been little progression" in the California case due to stipulations to extend the briefing schedule.  *Id.* 6:19–17:1.  To show common questions of law and fact between their case and this case, Intervenors point to the "largely identical antitrust claims against similar defendants, during an identical class period, in entirely overlapping markets."  *Id.* 7:10–12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:24-cv-00617 MWC (KESx)                                              Date: December 11, 2024

Title   Daniel Frank *et al.* v. Yardi Systems Inc. *et al.*

In their opposition briefing, Plaintiffs center their briefing on opposing the Intervenors' motion to transfer, as opposed to the motion to intervene. *See e.g.*, *Plaintiff Opp.* 10:16–17 (requesting only that the "Court deny the Proposed Intervenors' Motion to Stay or Transfer"). Defendants, on the other hand, oppose the intervention with two overarching arguments.

First, Defendants argue that permitting intervention would "substantially prejudice [] Defendants, who have expended significant resources litigating the claims in this action." *Def. Opp.* 2:22–4:4. Defendants point to the seven months that have passed since the filing of this lawsuit and note that in the interim, Defendants have filed several pending motions to dismiss. *Id.* 3:7–20.

Second, Defendants assert that intervention is "unwarranted because Plaintiffs lack Article III standing." *Id.* 4:17–5:23. Defendants cite their pending omnibus motion to dismiss for the conclusion that "this Court (and indeed any federal court) lacks Article III jurisdiction because the communities in which the five named [P]laintiffs leased their apartments never licensed or used Yardi's software, [RENTmaximizer]." *Id.* 5:14–16. Defendants cite to case law holding that intervention cannot salvage (and should not be allowed to salvage) a case where jurisdiction never existed. *See id.* 4:17–5:13. Defendants thus urge the Court to "exercise its discretion to deny intervention or, at a minimum, address the pending Omnibus MTD in the first instance given the compelling grounds supporting complete dismissal of the FAC." *Id.* 5:21–23. In a footnote, Defendants suggest that the Washington case also currently has a pending motion to dismiss for standing, which should, "further support denying th[is] Motion to Intervene." *Id.* 5:24–28, n.5.

The Court agrees with Intervenors that they have established the three elements of permissive joinder: (1) the Intervenors have independent grounds for jurisdiction based on their Sherman Act claims; (2) the intervention is timely, as this case is still in its initial stages; and (3) these cases have largely identical questions of law and fact, as detailed below in Section III.

As to Defendants' arguments about timing and prejudice, no substantive motion has been ruled on by this Court and the case is still in its early stages due to multiple deadline extensions. *See Scholl v. Mnuchin*, 483 F. Supp. 3d 822, 826 (N.D. Cal. 2020) ("[T]heir motion [to intervene] is timely as the court has not adjudicated any substantive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:24-cv-00617 MWC (KESx)                                                         Date: December 11, 2024

Title   Daniel Frank *et al.* v. Yardi Systems Inc. *et al.*

motion and briefing remains pending on plaintiffs' motions for preliminary injunction, class certification, and to appoint lead plaintiff and lead counsel.").

As to Defendants' arguments about standing, Defendants are correct that if the Court had already ruled on the issues in Defendants' omnibus motion to dismiss—and had ruled on those issues in Defendants' favor—then the Intervenors would not, at that point, be able to salvage a deficiency of standing. *See Lux EAP, LLC v. Comm. Action Empl't Assistance Program*, No. 21-56122, 2023 WL 4858130, at *1 (9th Cir. Jul. 31, 2023) ("[T]he subsequent intervention of a third party will not . . . create subject matter jurisdiction where none previously existed."). However, the Court has not decided Defendants' omnibus motion to dismiss. *See* Dkt. # 120. And given that the Plaintiffs' Complaint on its face establishes standing, the Court finds that at this stage, there is no justiciability issue that would prevent permissive intervenor. *See also Leisnoi, Inc. v. United States*, 313 F.3d 1181, 1184 (9th Cir. 2002) ("Appellant offers no authority requiring the district court to follow a particular order in addressing motions or other pleadings."). The Court also notes the paradox of Defendants pushing the Court to rule on their motions to dismiss before considering this motion to intervene, while simultaneously arguing that the Court has already expended too many resources in this case to justify intervention. *See Def. Opp.* 3:6–6 ("Defendants would suffer significant prejudice if intervention was permitted prior to a ruling on the pending motions to dismiss.); *id.* 3:16–20 (The extensive efforts invested by the parties and Court would be wasted if intervention was permitted.).

As to Defendants' argument that there is a pending motion to dismiss in the Washington case (which could in theory prevent Intervenors from having standing in Washington), the Court refrains from taking a position on the merits of a motion in front of a different district court.

For these reasons, the Court **GRANTS** Intervenors' motion to intervene.

III.   Request to Transfer

Intervenors next request the transfer of this case to the Western District of Washington under the first-to-file rule.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:24-cv-00617 MWC (KESx)                                    Date: December 11, 2024

Title   Daniel Frank *et al.* v. Yardi Systems Inc. *et al.*

The first-to-file rule allows a court to transfer, stay, or dismiss proceedings, "if a similar case with substantially similar issues and parties was previously filed in another district court." *See Kohn Law Group, Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015); *Prime Healthcare Servs., Inc. v. Serv. Employees Int'l Union*, No. 14-CV-3831 YGR, 2014 WL 5422631, at *2 (N.D. Cal. Oct. 24, 2014) ("A federal district court has discretion to dismiss, stay, or transfer a case to another district court under the first-to-file rule."). "The first-to-file rule is intended to 'serve[] the purpose of promoting efficiency well and should not be disregarded lightly.'" *Id.* (quoting *Alltrade, Inc. v. Uniweld Prods. Inc.*, 946 F.2d 622, 625 (9th Cir. 1991)). When applying the first-to-file rule, courts should be driven to maximize 'economy, consistency, and comity.'" *Id.* (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999)). "The rule is meant primarily to alleviate the burden placed on the federal judiciary by duplicative litigation and to prevent the possibility of conflicting judgments." *Prime Healthcare*, 2014 WL 5422631, at *2. "The most basic aspect of the first-to-file rule is that it is discretionary." *Id.* (quoting *Alltrade*, 946 F.2d at 628).

In determining whether to apply the first-to-file rule, courts analyze three factors: (1) chronology of the cases; (2) similarity of the parties; and (3) similarity of the issues. *Id.* (citing *Alltrade*, 946 F.2d at 625). This Court will evaluate the three factors below, as well as additional considerations raised by the parties.

  A.  <u>Chronology of the Lawsuits</u>

In analyzing a motion to transfer, the Court begins by analyzing which lawsuit was filed first. *Kohn*, 787 F.3d at 1240. Here, the parties agree that Intervenors filed the Washington case approximately six months prior to Plaintiffs filing the California case; thus, the chronology factor is met. *See Mot.* 9:14–20; *Plaintiff Opp.* 5:3–4, 6:19–20; *Kohn*, 787 F.3d at 1240 ("[W]e need not analyze this issue here because [plaintiff] does not argue that the present case was filed first.").

  B.  <u>Similarity of the Parties</u>

 "Courts in the Ninth Circuit have adopted a flexible approach in evaluating the similarity of the parties[.]" *Variscite v. City of Los Angeles*, No. 2:22-cv-08685-SPG-SK, 2023 WL 3493557, at *11 (C.D. Cal. Apr. 11, 2023). "[C]ourts have held that the first-to-file rule does not require exact identity of the parties." *Kohn*, 787 F.3d at 1240

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  8:24-cv-00617 MWC (KESx) | Date: December 11, 2024 |
| Title  Daniel Frank *et al.* v. Yardi Systems Inc. *et al.* | |

(collecting cases).  "Rather, the first-to-file rule requires only substantial similarity of parties."  *Id.* (collecting cases); *Variscite*, 2023 WL 3493557, at *11 ("[C]ourts within the Circuit have found this factor satisfied where there is at least *some* overlap between the parties . . . .").  Courts ask whether "the core nucleus of the parties" is the same and whether any "additional defendants are substantially tied thereto."  *Prime Healthcare*, 2014 WL 5422631, at *3.  However, just because a defendant is named in the first action, but is not named in the second action, does not "defeat application of the first-to-file rule."  *See Kohn*, 787 F.3d at 1240  (explaining that "[a] contrary holding" could condone "gamesmanship," such as a plaintiff "skirt[ing] the first-to-file rule merely by omitting one party from a second lawsuit") (citing *Cadle Co.*, 174 F.3d at 604)); *Prime Healthcare*, 2014 WL 5422631, at *3 (deciding that "five newly-named defendants" in the second case were "closely related" to the defendants in the first case and thus the parties were substantially similar).

  Plaintiffs emphasize that the only common defendant in the two cases is Yardi: "the [California] case names 14 property managers as Defendants, none of which is named as a defendant in the [Washington] case."  *Plaintiffs Opp.* 3:1–18, 8:9–10.  Plaintiffs also note that the named plaintiffs in the California case are different from the named plaintiffs in the Washington case, and that the proposed classes of plaintiffs are also not identical.  *Id.*

  Intervenors respond that the defendants in the two cases are substantially similar, evidenced by the complaint in the Washington case, which actually contemplates covering the Defendants in the California case:  "the [Washington] complaint names as co-conspirators 'Co-conspirators John Does 1-100' that are 'property managers and/or owners who are Yardi's clients and have used its RENTmaximizer revenue management software.'"  *Reply* 9:16–21.  As to the plaintiffs in the two cases, Intervenors argue that although the named plaintiffs in the two cases are different, the proposed class of plaintiffs in the California case are "subsumed" by the proposed class in the Washington case.  *Id.* 9:10–14.

  The Court agrees with the Intervenors' reasoning.  Yardi is at the heart of both this California case and the Washington case—demonstrated almost immediately in both complaints:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:24-cv-00617 MWC (KESx)                                        Date: December 11, 2024

Title     Daniel Frank *et al.* v. Yardi Systems Inc. *et al.*

- **Washington Complaint** (¶ 4):  "Yardi, together with the Operator [property manager] Defendants, has unlawfully solved this [competitive pricing] problem with a produced called 'RENTmaximizer' . . . . RENTmaximizer is an algorithmic pricing tool marketed to lessors that is intended to automate lessors' rental pricing practices and thus help multifamily property managers maximize rental income by increasing . . . revenue by 3 to 6 percent . . . ." *Wash. Compl.* ¶ 5 (quotation marks omitted).
- **California Complaint** (¶¶ 5–6):  "This perverse situation has arisen because Yardi has for more than a decade marketed its platform services based on a public guarantee that Property Managers using the platform join a horizontal conspiracy enabling them to charge their tenants at least 6% above market rates . . . . Using its property management software and its aptly named 'RENTmaximizer' service, Yardi provides a platform enabling price fixing among the Property Managers in apartment markets across the country."). *Cal. Compl.* ¶¶ 5–6.

In both cases, the non-Yardi defendants are clients of Yardi—specifically, property managers who allegedly provided competitively sensitive data to Yardi in return for information about competitive lease prices.  *See Wash. Compl.* ¶¶ 2, 36–45 ("[Defendant property manager] is one of Yardi's clients and began using its RENTmaximizer revenue management software . . . ."); *Cal. Compl.* ¶¶ 33–46 ("[Defendant property manager] provides apartment management services and is a client of Yardi.").  If these defendants—which are the same types of organizational bodies, with the same connections to the central defendant Yardi, and which are advancing substantially similar interests—were not considered to be "substantially similar," then counsel could simply track down a list of all of Yardi's property management clients and sue a handful of them in every state.  *See Kohn*, 787 F.3d at 1240 ("Our conclusion avoids awarding such gamesmanship and is consistent with the policy of the first-to-file rule, which is to maximize judicial economy, consistency, and comity." (citing *Cadle Co.*, 174 F.3d at 604)); *Variscite*, 2023 WL 3493557, at *11 (concluding the parties are substantially similar after deciding "the remaining non-overlapping defendants are advancing substantially similar interests").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:24-cv-00617 MWC (KESx)                                        Date: December 11, 2024

Title   Daniel Frank *et al.* v. Yardi Systems Inc. *et al.*

    As to the cases' plaintiffs, the Court finds the actual plaintiffs named by the Complaint to be trivial, and instead focuses on the proposed classes themselves, which are remarkably similar, including spanning the same time periods:

- **Washington Proposed Class**: "[A]ll persons or entities in the United States that leased multifamily housing in the United States from a landlord that used Yardi's RENTmaximizer or Revenue IQ software programs . . . at any time during the period of September 8, 2019, until the Defendants' and Conspirators' unlawful conduct and its anticompetitive effects cease to persist." *Wash. Compl.* ¶ 169.
- **California Proposed Class**: "[A]ll persons or entities in the United States that leased Mid-Range or High-End Apartment units, at any time beginning September 8, 2019, until the anticompetitive acts end, from a Property Manager that entered the conspiracy with Yardi to fix Apartment lease prices." *Cal. Compl.* ¶ 121.

Plaintiffs identify two distinctions in the class definitions.  First, the Washington case mentions the specific software, RENTmaximizer, in its class definition; whereas, the California Complaint does not.  *Plaintiff Opp.* 3:1–19.  The Court discusses in the following section why it is unpersuaded by Plaintiffs' repeated attempts to distance themselves from RENTmaximizer—but for now, the Court notes that the California Complaint's *first* "legal and factual question[] common to the Class is:  "Whether a Class member's Property Manager uses Yardi RENTmaximizer."  *Cal. Compl.* ¶ 129(a).

    Second, Plaintiffs in this case distinguish their proposed class by asserting that the Washington case "alleges a nationwide relevant market . . . [*Wash. Compl.*] ¶ 165," whereas the California case "adopts Yardi's own market definition consisting of local markets that are no larger than a metropolitan statistical area."  *Plaintiff Opp.* 3:20–23.  Yet, the Court does not see why the Washington case purporting to cover a larger geographic market (all of the United States) would be a reason to keep this California case separate.  The fact the Washington case may subsume the California case is another reason to transfer.  Moreover, the California case itself mentions allegations of "a *nationwide* conspiracy fixing prices in each Apartment Market . . . . Yardi is a national company delivering management software to Property Managers throughout the country . . . ." *See Cal. Compl.* ¶ 56 (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  8:24-cv-00617 MWC (KESx) | Date: December 11, 2024 |
| Title    Daniel Frank *et al.* v. Yardi Systems Inc. *et al.* | |

Ultimately, the central character of these two cases is the same:  Yardi.  The peripheral defendants in these cases are also the same:  property managers, which are clients of Yardi, allegedly conspiring with Yardi.  The proposed class definitions are also nearly identical:  individuals who rent from the allegedly conspiring property manager defendants.  And the class period is identical:  from September 8, 2019, until the anticompetitive acts end.  The Court finds that although these parties are not technically identical, the parties are substantially similar.

    C.    <u>Similarity of the Issues</u>

"Courts within the Ninth Circuit have also adopted a 'flexible approach' in evaluating the similarity of the issues factor."  *Variscite*, 2023 WL 3493557, at *12 (citing *PETA, Inc. v. Beyond the Frame. Ltd.*, No. CV 10-07576 MMM (SSx), 2011 WL 686158, at *2).  "The issues in both cases [] need not be identical, only substantially similar."  *Kohn*, 787 F.3d at 1240.  "To determine whether two suits involve substantially similar issues, [courts] look at whether there is 'substantial overlap' between the two suits."  *Id.* at 1241 (citing *Harris Cnty., Tex. V. CarMax Auto Superstores Inc.*, 177 F.3d 306, 319 (5th Cir. 1999)).

As the Intervenors outline in their motion, the core allegations in the California case are identical to those in the Washington case.  *Mot.* 1:6–13.  Both cases allege an antitrust conspiracy between Yardi and its property management clients, catalyzed by Yardi's software, RENTmaximizer.  *Cal. Compl.*; *Wash. Compl.*; *see Prime Healthcare*, 2014 WL 5422631, at *3 (transferring because "the two complaints alleged largely identical conspiracies").  Both cases bring their allegations under the same federal antitrust statute:  Section 1 of the Sherman Act.  *Cal. Compl.* ¶¶ 132–142; *Wash. Compl.* ¶¶ 178–208.  Neither case brings allegations under any other statute.  *Cal. Compl.*; *Wash. Compl.*  And in bringing nationwide conspiracies, neither case mentions a law or legal theory specific to their state.  *Cal. Compl.*; *Wash. Compl.*

As alluded to earlier, Plaintiffs' main argument to distinguish the cases is that the Washington case focuses on RENTmaximizer while its California counterpart "does *not* challenge the legality of Yardi's alleged algorithmic pricing."  *Plaintiff Opp.* 5:11–12, 8:10–11.  To evidence that the California case "disclaims any reliance on [Yardi's] software algorithms as a basis for liability," Plaintiffs point to the following sentence of their California Complaint:  "Yardi's conduct is illegal not because Yardi allegedly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  8:24-cv-00617 MWC (KESx) | Date: December 11, 2024 |
| Title  Daniel Frank *et al.* v. Yardi Systems Inc. *et al.* | |

employs an algorithmic pricing tool.  Whether Yardi uses an algorithm or an abacus to calculate its 'recommended' lease prices is immaterial." *Id.* 5:11–13 (citing *Cal. Compl.* ¶ 24).  Plaintiffs' logic is that RENTmaximizer is "immaterial" to the California case because their Complaint generally pleads the following three-step conspiracy, which does not mention RENTmaximizer:  (1) "Property Managers provide to Yardi confidential information about their apartments, including lease pricing and term;" (2) "Property Managers agree to permit Yardi to manage their pricing;" and (3) "Property Managers agree not to compete against each other on price." *Id.* 5:4–10.

But Plaintiffs' attempts to distance themselves from RENTmaximizer are belied by their Complaint's fixation on the software.  The 44-page Complaint mentions the word "RENTmaximizer" over fifty times. *Cal. Compl.*  The Complaint specifies that the allegations within it come from statements about RENTmaximizer:  the "allegations in [the Complaint] are taken from Yardi's and the Property Managers' own statements about the RENTmaximizer service." *Id.* ¶ 25.  Plus, the three-step conspiracy, which Plaintiffs now insist renders RENTmaximizer "immaterial," is entirely linked to the software by their own Complaint—Plaintiffs' three-step conspiracy is functionally a summary of how Yardi's software works.  The full paragraph of Plaintiffs' Complaint reads:

> Using its property management software and its aptly named "RENTmaximizer" service, Yardi provides a platform enabling price fixing among the Property Managers in apartment markets across the country.  Yardi's collusive system comprises three distinct elements:  (a) the Property Managers agree with Yardi to convey their competitively sensitive pricing data to Yardi; (b) the Property Managers agree to empower Yardi to use their data to manage the rental pricing for each Property Manager in a particular market; and (c) the Property Managers agree not to compete with each other on price.

*Id.* ¶ 6.  In fact, later, Plaintiffs' Complaint further clarifies that "RENTmaximizer has three components" and then proceeds to detail how the three-step conspiracy relies on RENTmaximizer. *See id.* ¶¶ 58–61 ("RENTmaximizer has three components. *First,* Yardi's agreements require the Property Managers to provide Yardi with their competitively sensitive information . . . . *Second*, each Property Manager agrees to allow Yardi to manage the prices . . . . *Third*, by outsourcing their pricing decisions to a single entity . . . each Property manager agrees . . . not to compete based on that price.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   8:24-cv-00617 MWC (KESx)                                        Date: December 11, 2024

Title   Daniel Frank *et al.* v. Yardi Systems Inc. *et al.*

Plaintiffs may bring a lawsuit against Yardi that does not revolve around RENTmaximizer, but that is not the litigation currently in front of us.

In a similar strain of argument, Plaintiffs contend that the lawyers in the Washington case have crafted a different legal theory than the California lawyers: "Plaintiffs here [in California] do not assert claims centered on algorithmic pricing, as do the plaintiffs in the [Washington] Case.  While both cases concern alleged violations of Section 1 of the Sherman Act, the theories in the two cases are quite different:  the [California] case is based on well-settled Section 1 jurisprudence rather than on a novel theory seeking judicial approval for the first time." *Plaintiff Opp.* 8:10–15.  This is another distinction without a difference.  Counsel in Washington forwarding an additional legal strategy that is more novel than the legal strategies currently being pursued in California does not affect whether the cases are substantially similar.  In fact, it only furthers the conclusion that the Washington case is broader than, and therefore may already consume, the California case.

Accordingly, the Court finds that the two cases possess substantially similar issues.

D.   Additional Considerations

The parties ask the Court to consider additional factors in applying the first-to-file rule.  Although the Court need not reach the parties' additional considerations, the Court will nonetheless address them.  *See Prime Healthcare*, 2014 WL 5422631, *4 ("Having concluded that each of the factors in the first-to-file analysis weigh in favor of transfer, the Court need not reach the other considerations raised.").

Defendants allege that "certain defendants are not subject to personal jurisdiction or venue in the Western District of Washington because they do not do business in Washington, including 10 Federal MGMT, LLC, Walton Communities, LLC, ECF Nos. 108, 137, and Western Property Management." *Def. Opp.* 6:16–19.  Defendants submit, as they did in pending motions to dismiss, that the Court lacks personal jurisdiction over limited liability companies ("LLCs") under the Clayton Act.  *See, e.g.*, Dkt. # 108.  Yet, as Intervenors point out, stripping jurisdiction for LLCs under the Clayton Act would be "a first-of-its kind decision in the Central District of California." *Reply* 12:5–11.  Thus, if anything, this consideration weighs in favor of transfer, as the Court hesitates to opine on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No.   8:24-cv-00617 MWC (KESx) | Date: December 11, 2024 |
| Title   Daniel Frank *et al.* v. Yardi Systems Inc. *et al.* | |

unprecedented legal issues in a case that belongs with its substantially similar counterpart in front of a different district court.

Defendants next allege that upon transfer, certain unidentified Defendants "would have to go find new counsel in Washington." *Def. Opp.* 4:13–16.  This consideration does not undo the fact that these cases are nearly identical.  And if anything, this factor points to transferring the case sooner, rather than later, to allow potentially new counsel to review and acclimate to the case.

Last, Plaintiffs speculate as to why Intervenors decided to transfer the case at this moment (including a theory about allegedly new evidence found on one of the Defendants' webpages).  *See Plaintiff Opp.* 6:10–17.  The Court will not join in speculating as to the motivations of the parties, if it did, it would also have to wonder why Plaintiffs filed such a similar Complaint in California six months after the Washington case began.

After analysis of the timing, parties, and issues, the Court finds that these two cases are substantially similar, and that it would be impractical for this case to proceed in the wake of its Washington counterpart.

IV.   Conclusion

For the foregoing reasons, the Court **GRANTS** Intervenors' motion to intervene and **GRANTS** the motion to transfer.  This action is hereby transferred to the Western District of Washington.  Upon transfer and filing of this case in Washington, the parties shall file a Notice of Related cases to alert the Washington court to the related pending matter.

**IT IS SO ORDERED.**

| | : |
|---|---|
| **Initials of Preparer** | TJ |